## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE J. WHITE and SHAWN M. ROY, ) <br> Individually and on Behalf of all Others ) <br> Similarly Situated, ) <br>             Plaintiff, ) <br> ) <br>      v. ) <br> ) <br> JEROME A. CHASE, JR., as he is the Trustee ) <br> Of Framingham Ford Defined Benefit Pension ) <br> Plan Trust Agreement, Adopted in 2002 and ) <br> Again in 2004, ) <br>             Defendant. ) <br> _____) | **CIVIL ACTION** <br> **NO. 4:15-40013-TSH** |

## REPORT AND RECOMMENDATION

### October 28, 2015

Hennessy, M.J.

Pursuant to 28 U.S.C. § 636(b)(1)(A), by order of reference (Docket #18), this matter was referred to me for a Report and Recommendation on defendant Jerome A. Chase, Jr., as Trustee of Framingham Ford Defined Benefit Pension Plan Trust Agreement's ("defendant") Motion to Dismiss the first Amended Complaint.  (Docket # 15).  Plaintiffs Eugene J. White and Shawn M. Roy, Individually and on Behalf of all Others Similarly Situated ("plaintiffs") have filed an Opposition (Docket #17), to which defendant has not replied.  In consideration of the foregoing submissions and for the reasons that follow, I recommend that defendant's motion be granted in part and denied in part.

Background and Procedural History

Plaintiffs initiated this action by filing a Class Action Complaint with Demand for Jury Trial ("Original Complaint") on January 21, 2015.  (Docket #1).  On March 31, 2015, defendant

moved, primarily on statute of limitations grounds, for dismissal of the Original Complaint.  <u>See</u>

Docket #9-10.  Plaintiffs' opposition stated that they neglected to include in the Original

Complaint allegations establishing fraudulent concealment and, as such, essentially conceded

that the Original Complaint, as pleaded, was time-barred.  <u>See</u> Docket #11 at p. 1.  Accordingly,

plaintiffs sought leave to amend their complaint to include such allegations, which, they argued,

would render this action timely.  <u>See</u> <u>generally</u> Docket #11.  On May 29, 2015, the Honorable

Timothy S. Hillman granted defendant's motion without prejudice and with leave for plaintiffs to

file an amended complaint.  (Docket #12).

    Shortly thereafter, plaintiffs filed the First Amended Class Action Compliant

("FACAC"), which is the subject of the current motion.  As in the Original Complaint, plaintiffs

alleged in the FACAC that they (and others similarly situated)[1] suffered damages as a result of

defendant's March 14, 2007 cancellation, effective April 1, 2007, of an Employee Retirement

Income Security Act ("ERISA") Pension Plan (the "Pension Plan") of which the plaintiffs were

beneficiaries.  <u>See</u> <u>generally</u> Docket #13.  The thrust of plaintiffs' allegations is that defendant

terminated the plan without providing proper notice to plaintiffs.  <u>Id.</u> ¶¶ 13-15; <u>see</u> <u>also</u> Docket

#13-1.

    As indicated, the FACAC also contains a series of allegations which seek to establish

defendant's fraudulent concealment of this action.  In short, plaintiffs now allege that they did

not even know of the Pension Plan's *existence* until approximately November 30, 2013, when

Mr. White voluntarily terminated his employment with Framingham.  (Docket #13 ¶¶ 16-18).  It

was at the same time that Mr. White (and other retired Framingham employees) first learned of

---

[1] The named and putative plaintiffs were employees of Framingham Auto Sales, Inc., d/b/a Framingham Ford Lincoln ("Framingham") and beneficiaries of Framingham's company-wide pension plan, which was first adopted in 2002 and again in 2004.  (Docket #13 ¶¶ 2, 12).

the April 2007 plan freeze.  Id. ¶¶ 19-20.  The FACAC further alleges that defendant

"fraudulently cancelled [sic] the facts of the existence of said ERISA plan, or that the plaintiffs

were beneficiaries thereunder, until November 30, 2013," and that, despite plaintiffs' reasonable

diligence, the existence of the Pension Plan was "inherently unknowable" until less than two

years before the filing of the FACAC. (Id. ¶¶ 21, 23).

On the strength of these allegations, plaintiffs assert four causes of action.  They allege

that defendant: (1) improperly terminated the Pension Plan without providing adequate and

timely notice of the termination, in violation of ERISA § 204(h); (2) terminated the Pension Plan

without a written Plan Document, in violation of ERISA § 402; (3) breached his fiduciary duty

by terminating the plan without a written Plan Document, in violation of ERISA § 404; and (4)

interfered with the plaintiffs' attainment of benefits under the Pension Plan, in violation of

ERISA § 510.  See Docket #13 ¶¶ 24-30.

As in his initial motion, defendant's primary arguments for dismissal proceed on statute

of limitations grounds.[2]  Although Judge Hillman did not state the basis for his dismissal of the

Original Complaint, I infer—from the facts that (1) Judge Hillman dismissed the Original

Complaint in its entirety; (2) plaintiffs' Opposition conceded that their Original Complaint was

untimely; and (3) Judge Hillman granted leave to replead "as set forth in [plaintiffs'] opposition

to the motion to dismiss" (see Docket #12)—that this decision rested on statute of limitations

grounds.  This posture narrows the principal question before the court to a determination of

whether the newly-asserted allegations suffice to toll the statute of limitations and render this

action timely.  As discussed below, the court answers this question in the affirmative with

---

[2] Defendant also attacks the merits of the first and fourth claims asserted against him.

respect to the first, second, and fourth claims, and in the negative with respect to the third claim.

Legal Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6),[3] the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)).  Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss.  Trans-Spec Truck Serv. v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Statute of Limitations

Because "ERISA itself does not provide a statutory period of limitation for benefit claims," Taylor v. Pension Plan of Pipefitters Local 537 Pension Fund, No. 06 Civ. 12156, 2009 WL 1812794, at *4 (D. Mass. June 11, 2009), plaintiffs' claims are governed by a range of

---

[3] Defendant's instant motion does not expressly reference Rule 12(b)(6), but it proceeds under the same theories for dismissal as his initial motion, which did make such reference.  Accordingly, the court finds it appropriate to apply the Rule 12(b)(6) standard here.

statutes of limitation and accrual dates.  Accordingly, although the parties' briefs address the statute of limitations issue in a somewhat broad-brush manner, the court will consider separately the timeliness of each of plaintiffs' claims.

First and Second Claims

The first step in addressing the timeliness of plaintiffs' first two claims is determining whether these are claims for benefits or breach of fiduciary duty.  This is because, while, as noted, ERISA does not provide a statute of limitations for the former, see Taylor, supra; it does so for the latter.  See 29 U.S.C. § 1113 (establishing statute of limitations for ERISA actions "with respect to a fiduciary's breach of any responsibility, duty, or obligation").  To be sure, the line separating these categories is not always entirely clear.  See Calder v. SBC Pension Ben. Plan, 549 F. Supp. 2d 824, 833 (W.D. Tex. 2008) (explaining conceptual overlap between ERISA claims for benefits and for breach of fiduciary duty) (citing Prod. & Maint. Employees Local v. Roadmaster Corp., 954 F.2d 1397, 1402 (7th Cir. 1992)).  With that said, I find that plaintiff's first and second claims are most aptly categorized as "claim[s] for benefits."  See, e.g., Engers v. AT & T, Inc., No. 98 Civ. 3660, 2010 WL 2326211, at *5 (D.N.J. June 7, 2010) (construing § 402 claim as claim for benefits) (citing Engers v. AT&T, 428 F. Supp. 2d 213, 226 (D.N.J. 2006)), aff'd, 466 F. App'x 75 (3d Cir. 2011); Calder, 549 F. Supp. 2d at 836 ("[T]he Court agrees with the Second Circuit [in Frommert v. Conkright, 433 F.3d 254 (2d Cir. 2006)] that the 'gravamen' of [a § 204(h)] claim is a claim for benefits.").

In light of ERISA's silence on the limitations period for benefits claims, such actions generally are "governed by the statute of limitation prescribed for contract actions in the state in which the claim is brought."[4]  Taylor, 2009 WL 1812794, at *4 (quoting Alcorn v. Raytheon

---

[4] This proposition follows from the general principle that where, as here, "a federal statute contains no limitations period," a federal court "is to borrow the limitations period in the most nearly analogous state

Co., 175 F. Supp. 2d 117, 120 (D. Mass. 2001) and citing Doe v. Blue Cross & Blue Shield

United of Wisconsin, 112 F.3d 869, 873 (7th Cir. 1997)).  The statute of limitations for such

actions in Massachusetts is six years.  Id. (citing Alcorn, 175 F. Supp. 2d at 121).

This is only half of the inquiry, however.  The court must also determine the more

involved question of when the statute of limitations begins to run.  The First Circuit recently

stated that "[o]rdinarily, a cause of action for ERISA benefits accrues 'when a fiduciary denies a

participant benefits.'"  Riley v. Metro. Life Ins. Co., 744 F.3d 241, 244-45 (1st Cir.) (quoting

Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 223 (1st Cir. 1996), partially

abrogated by Hardt v. Reliance Std. Life Ins. Co., 560 U.S. 242 (2010)), cert. denied, 135 S. Ct.

94, 190 L. Ed. 2d 39 (2014).  More specifically, "an ERISA cause of action accrues when, after a

claim for benefits is made and a specific sum is sought, the ERISA plan repudiates the claim or

the sum sought, and that rejection is clear and made known to the beneficiary."  Id. at 245 (citing

cases).

Notably, even where, as here, a claim for benefits has *not* been filed and formally denied,

the claim nonetheless accrues "when there has been a repudiation [of the employee's claim for

benefits] by the fiduciary which is clear and made known to the beneficiary."  Bolduc v. Nat'l

Semiconductor Corp., 35 F. Supp. 2d 106, 119 (D. Me. 1998) (quoting Union Pac. R. Co. v.

Beckham, 138 F.3d 325, 330 (8th Cir. 1998)) (internal quotation marks omitted); but see Wetzel

v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program, 189 F.3d 1160, 1176 (9th Cir.

1999) (Graber, J., dissenting) (citing various circuit courts that require a claim for benefits to be

made and denied in order for ERISA claim to accrue), on reh'g en banc, 222 F.3d 643 (9th Cir.

2000).  And "[w]hen the consequences of an earlier action on the plaintiff's benefits are *not*

_____

or federal statute of limitations."  See Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869,
873 (7th Cir. 1997).

explicitly made clear to the plaintiff, . . . a cause of action for recovery of benefits under ERISA accrues when an application for benefits is formally denied."  Walsh v. Gillette Co., No. 03 Civ. 11557, 2005 WL 2977426, at *4 (D. Mass. Sept. 13, 2005) (emphasis added) (citing Salcedo v. John Hancock Mut. Life Ins. Co., 38 F. Supp. 2d 37, 42 (D. Mass. 1998)); see also Rivera-Diaz v. Am. Airlines, Inc., 229 F.3d 1133 (1st Cir. 2000) (vacating dismissal on timeliness grounds where plaintiff "has not yet been denied any benefits-retrospective or prospective-because he has not yet applied for them.  Thus, his claim for denial of benefits, whether under ERISA or in tort, appears not yet to have accrued.") (citing Cottrill).

Ultimately, the court need not resolve the somewhat muddled issue of what is required to trigger the statute of limitations for plaintiffs' first and second claims, since, irrespective of the answer to that question, these claims are timely.  That is, they either (1) first accrued on November 30, 2013—when the alleged repudiation of benefits (and indeed, the very *existence* of the Pension Plan) was first made known to plaintiffs, see Riley, supra; or (2) have not yet accrued, since the present record reveals no application for benefits to have been made and/or formally denied.  See Rivera-Diaz, supra.  In either instance, the January 2015 filing of the Original Complaint falls safely within the limitations period, even absent a satisfaction of the formal requirements for fraudulent concealment.[5]  Accordingly, the court recommends denying the portion of defendant's motion that seeks dismissal of the first two claims on statute of limitations grounds.

---

[5] To this end, defendant's timeliness argument, which proceeds on the grounds that plaintiffs' claims are time-barred because they fail to "establish fraudulent concealment as a matter of law," see Docket #15-1 at pp. 8-11, is of no moment.

<u>Third Claim</u>

Unlike the somewhat amorphous first and second claims, plaintiffs' third claim expressly sounds in breach of fiduciary duty, for which ERISA provides the applicable statute of limitations; namely, the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  Because plaintiffs allege a breach of duty occurring on March 14, 2007,[6] absent a tolling of the statute of limitations, plaintiffs' third claim expired on March 14, 2013.[7]

It is here that the doctrine of fraudulent concealment becomes paramount, since § 1113's exception clause has been "construed to mean 'fraudulent concealment.'"  <u>Breed v. Dawson</u>, No. 93 Civ. 111, 1994 WL 129770, at *1 (D. Me. Feb. 14, 1994) (citing <u>Martin v. Consultants & Adm'rs, Inc.</u>, 966 F.2d 1078, 1093 (7th Cir. 1992); <u>Schaefer v. Arkansas Medical Soc'y</u>, 853 F.2d 1487, 1491 (8th Cir. 1988)); <u>see also</u> <u>J. Geils Band Employee Ben. Plan v. Smith Barney</u>

---

[6] The FACAC may plausibly be read to allege a breach occurring on April 1, 2007 (*i.e.* the date the Pension Plan freeze went into effect), a distinction that is without a difference as regards the instant motion.

[7] It may be argued that defendant's alleged breach constitutes an omission—inasmuch as defendant allegedly failed to give notice of the amendment—therefore triggering 29 U.S.C. § 1113(1)(B), and that defendant could have cured this omission at any time thereafter by informing plaintiffs of the amendment. Plaintiffs, however, make no such argument, which, in any event, misconstrues the nature of the FACAC, <u>see</u> Docket #13 ¶ 27 (defendant allegedly breached fiduciary duty "[b]y implementing the termination without a written Plan document"), and rests on too liberal an interpretation of "omission."

Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996) ("[W]e hold that the fraud or concealment tolling provision of Section 1113 incorporates the fraudulent concealment doctrine . . . ."). In order to avail themselves of the benefit of the fraudulent concealment doctrine, plaintiffs must show that "(1) [defendant] engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of reasonable diligence." J. Geils Band, 76 F.3d at 1255 (quoting Larson v. Northrop Corp., 21 F.3d 1164, 1172 (D.C. Cir. 1994)). Per Fed. R. Civ. P. 9(b), it is plaintiffs' burden to plead with particularity the facts giving rise to their claim of fraudulent concealment. Id.

Plaintiffs here fail to carry their burden. Far from pleading with particularity facts needed to support a claim of fraudulent concealment, the purportedly curative portions of the FACAC essentially do two things. First, they recite a summary of Mr. White's employment with Framingham, his November 2013 discovery of the Pension Plan's existence and its freeze six years prior, and the fact that neither was made known to him or any other retired employees before that date. (Docket #13 ¶¶ 16-20). The FACAC then alleges, in conclusory fashion, that "the defendant fraudulently cancelled [sic] the facts of the existence of [the] ERISA plan, or that the plaintiffs were beneficiaries thereunder, until November 30, 2013"; that defendant's silence "constituted an act of fraudulent concealment in the nature of a positive act with intent to deceive"; and that despite plaintiffs' reasonable diligence, "the fact that there was an ERISA plan was inherently unknowable until it was discontinued [sic][8] . . . less than two (2) years ago." (Id. ¶¶ 21-23).

---

[8] Reading this passage against the broader context of the FACAC, the court assumes that plaintiffs here meant to write "discovered."

These threadbare recitals of defendant's alleged course of conduct designed to deceive and plaintiffs' diligence fail to satisfy plaintiffs' burden under Fed. R. Civ. P. 9(b), particularly with regard to the first and third elements of fraudulent concealment.  See, e.g., Le Bouteiller v. Bank of New York Mellon, No. 14 Civ. 6013, 2015 WL 5334269, at *10 n.4 (S.D.N.Y. Sept. 11, 2015) ("The assertion that Defendants fraudulently concealed the assignment is not supported by well-pled factual allegations, and therefore will not be accepted as true.") (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)); DJ Mfg. Corp. v. Tex-Shield, Inc., 275 F. Supp. 2d 109, 122 (D.P.R. 2002) ("Conclusory allegations will not suffice to establish a claim of fraudulent concealment."), rev'd, 337 F.3d 56 (1st Cir. 2003), reh'g granted, opinion withdrawn (Oct. 6, 2003), on reh'g, 347 F.3d 337 (1st Cir. 2003) and aff'd, 347 F.3d 337 (1st Cir. 2003).  Simply put, plaintiffs' unsupported allegation that defendant intended to conceal his alleged wrongdoing is insufficient to satisfy Rule 9(b)'s pleading standard.  Plaintiffs' due diligence contention is perhaps even more anemic, as there is nothing in the FACAC (other than the perfunctory recital of the words "reasonably diligent") that suggests satisfaction of this element.  See DJ Mfg. Corp., 275 F. Supp. 2d at 122 ("Without any allegations of due diligence, the plaintiff cannot claim that its claims were fraudulently concealed.") (citing Berkson v. Del Monte Corp., 743 F.2d 53, 56 (1st Cir. 1984)).

In laundry list form, plaintiffs cite a number of cases that they argue compel a contrary conclusion.  None of their cited authority is persuasive.  The courts in Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir. 2006) and J. Geils Band, 76 F.3d at 1259 *rejected* fraudulent concealment arguments because, as here, the plaintiffs failed to satisfy the doctrine's due diligence requirement.  Several other cited cases do not even discuss fraudulent concealment, but

instead focus their inquiries on the "actual knowledge" prong of 29 U.S.C. § 1113.[9]  <u>See</u>

<u>generally</u> <u>Fish v. GreatBanc Trust Co.</u>, 749 F.3d 671 (7th Cir. 2014); <u>Gluck v. Unisys Corp.</u>, 960

F.2d 1168 (3d Cir. 1992); <u>Solis v. Plan Ben. Servs., Inc.</u>, 620 F. Supp. 2d 131 (D. Mass. 2009);

<u>Fechter v. Connecticut Gen. Life Ins. Co.</u>, 800 F. Supp. 178 (E.D. Pa. 1991).  Finally, the

complaint in <u>In re Fruehauf Trailer Corp.</u>, 250 B.R. 168 (D. Del. 2000) contained detailed

allegations of "acts that were allegedly fraudulently concealed" from the plaintiffs, <u>see</u> <u>id.</u> at 187-

89, thus rendering that case inapposite.

    Finally, the court notes that FACAC states that the existence of the ERISA plan was

"inherently unknowable until it was discontinued [sic] and that was less than two (2) years ago."

(Docket #13 ¶ 23).  This statement appears to invoke the "inherently unknowable" exception to

the statute of limitations, which is similar to, but distinct from, fraudulent concealment.  <u>See,</u>

<u>e.g.</u>, <u>First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.</u>, 717 F. Supp. 2d 156, 160 (D. Mass.

2010) ("[T]here are two well-established exceptions to [the general rule regarding accrual of

limitations period] for cases involving 1) 'inherently unknowable' wrongs and 2) fraudulent

concealment.").  As was the case with fraudulent concealment, the "inherently unknowable"

exception does not salvage plaintiffs' third claim.  In addition to the facts that (1) plaintiffs do

not argue for the application of this exception; and (2) it is defendant's alleged wrong (as

opposed to "the fact that there was an ERISA plan," <u>see</u> Docket #13 ¶ 23) that plaintiffs would

have to show was unknowable in order for the doctrine to apply, this exception, like fraudulent

concealment, carries a due diligence requirement.  <u>See, e.g.</u>, <u>First Choice Armor</u>, 717 F. Supp. 2d

at 160.  As stated above, this element has not been sufficiently pleaded.

---

[9] Section 1113's "actual knowledge" consideration is not relevant here because the statute allows the limitations period to run from the satisfaction of the earlier of the two conditions set forth therein, which, as discussed, occurred in March (or alternatively April) 2007.  <u>See</u> 29 U.S.C. § 1113.

In view of the foregoing, the court finds plaintiffs' third claim to be time-barred and accordingly recommends that it be dismissed with prejudice.

Fourth Claim

The calculus regarding the fourth claim, brought pursuant to ERISA § 510, is somewhat more straightforward, since the First Circuit has established that such claims are governed by a three-year statute of limitations. See Muldoon v. C.J. Muldoon & Sons, 278 F.3d 31, 32 (1st Cir. 2002) (writing that "[b]ecause Congress did not provide a statute of limitations in the ERISA statute for section 510 claims, federal courts must apply the limitations period of the state-law cause of action most analogous to the federal claim"[10] and applying three-year limitations period for § 510 claim) (citing cases); e.g., Newman v. Metro. Life Ins. Co., No. 12 Civ. 10078, 2013 WL 951779, at *5 (D. Mass. Mar. 8, 2013) (citing Muldoon and applying three-year statute of limitations to § 510 claim).

That said, the issue of accrual warrants discussion here as well. "A claim under ERISA § 510 accrues when a plaintiff reasonably becomes aware of the interference with his rights . . . ." Riley v. Metro. Life Ins. Co., 971 F. Supp. 2d 186, 191 (D. Mass. 2013), aff'd, 744 F.3d 241 (1st Cir. 2014), cert. denied, 135 S. Ct. 94, 190 L. Ed. 2d 39 (2014); see also Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 139 (1st Cir. 2005) ("For a claim under ERISA § 510, 'it is the [challenged employment] decision and the participant's discovery of this decision that dictates accrual' of Plaintiffs' cause of action.") (quoting Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1140-41 (7th Cir. 1992)). Thus, although, as discussed above, plaintiffs have not satisfied the formal requirements of fraudulent concealment doctrine, this claim nonetheless is timely. Construing the FACAC in the light most favorable to the non-movant, as I must, see, e.g.,

---

[10] The currently applicable state-law statute is M.G.L.A 260 § 2A.  See Muldoon, 278 F.3d at 32.

<u>Lorenzana v. S. Am. Restaurants Corp.</u>, No. 14 Civ. 1698, 2015 WL 4979373, at *1 (1st Cir. Aug. 21, 2015) (citing <u>Lister v. Bank of Am.</u>, 790 F.3d 20, 23 (1st Cir. 2015)), I find that Mr. White did not "reasonably become[ ] aware of the interference with his rights," <u>see</u> <u>Riley</u>, 971 F. Supp. 2d at 191, until November 2013.  This conclusion yields a limitations period ending in November 2016, and by extension, a finding that plaintiffs' fourth claim is timely pled.

### Merits of the Claims

In addition to his statute of limitations argument, defendant also argues for dismissal on the merits of the first and fourth claims.  Having found these causes of action to be timely, I will now address defendant's arguments regarding the substance of these claims.  <u>See</u> <u>Taylor v. Pension Plan of Pipefitters Local 537 Pension Fund</u>, No. 06 Civ. 12156, 2009 WL 1812794, at *5 (D. Mass. June 11, 2009) (where defendant did not sustain burden of showing ERISA claim was time-barred, court "decline[d] to act on the statute of limitations contention, and proceed[ed] to the merits of the Plaintiff's claims").

### First Claim

Defendant's primary substantive argument for dismissal of the first claim is that the FACAC fails to "show that 'it is reasonably expected that the amendment will reduce the amount of the future annual benefit commencing at normal retirement age,'" as is required to show a violation of ERISA § 204(h)(1).  <u>See</u> <u>Gillis v. SPX Corp. Individual Account Ret. Plan</u>, 511 F.3d 58, 64 (1st Cir. 2007) (quoting 26 C.F.R. § 54.4980F–1, Q & A–6(b)) (emphasis removed).  I find this argument to be without merit.  While plaintiffs have not expressly alleged a reduction of benefits in the manner mandated by <u>Gillis</u>, the court may reasonably infer one.  The March 14, 2007 "amendment" states that existing plan participants "will not earn *any additional benefits* after April 1, 2007," and that "[a]t age 65, [participants'] benefit[s] will be the benefit [they]

have earned as of April 1, 2007." (Docket #13-1) (emphasis added). It is evident, therefore, that the amendment, which decreased future benefits to the point of nonexistence, resulted in a "reduc[tion of] the amount of the future annual benefit commencing at normal retirement age." See Gillis, 511 F.3d at 64.

The facts underlying Gillis are instructive by way of contrast. The suit there involved a transition from one pension plan to another, see id. at 60; as such, the plaintiff "was required to submit credible evidence to the district court demonstrating that the amount he would have accrued under the previous [ ] pension plan . . . was more than the amount he would have accrued under the [new] plan." Id. at 64. Thus, although the plaintiff in Gillis provided substantially more supporting information than has been submitted here, see id., because that case entailed a comparison of two pension plans—rather than, as here, the cancellation of a plan which resulted in benefits ceasing altogether—the Circuit ultimately concluded that the plaintiff did not meet his burden because he "failed to provide evidence to the district court upon which it could conclude that [plaintiff] would have earned more, as of his normal retirement age, under the previous [ ] plan than under the [new] plan." Id. The evidence before this court, scant though it may be, allows for precisely that conclusion. Accordingly, the court recommends denying the portion of defendant's motion that seeks to dismiss the first cause of action on the merits.[11]

---

[11] Defendant also relies on § 204(h) to argue that a claim requires a showing of an "egregious failure to meet any requirement of this subsection with respect to any plan amendment." (Docket #15-1 at p. 12). This argument rests upon a misreading of the relevant portion of the statute, which prescribes the consequences of an amendment to a plan "*[i]n the case of*" such egregious failure. See 29 U.S.C. § 1054(h)(6)(A); see also CIGNA Corp. v. Amara, 563 U.S. 421, 131 S. Ct. 1866, 1875, 179 L. Ed. 2d 843 (2011) (participants entitled to certain benefits "in case of an 'egregious failure'") (quoting § 1054(h)(6)(A)).

Fourth Claim

Finally, defendant argues for dismissal of the fourth claim on the grounds that the

FACAC fails to plead that a retaliatory adverse job action was taken against plaintiff.  Although

retaliation is not explicitly referenced in § 510, "[t]he ultimate inquiry in a section 510 case is

whether the employment action was taken with the specific intent of interfering with the

employee's ERISA benefits."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.

1995) (citing cases).[12]  Accordingly, "no ERISA cause of action will lie where the loss of

benefits was a mere consequence of, but not a motivating factor behind, a termination of

employment," since "[w]ithout such a requirement, every discharged employee could have a

potential claim against his or her employer."  Id. (citing Dister v. Continental Group, Inc., 859

F.2d 1108, 1111 (2d Cir. 1988)).

Plaintiffs here have failed to satisfy this requirement.  Indeed, a typical § 510 suits is one

in which "a participant suffers an adverse action because of having availed himself of a right

protected by ERISA," see Miranda Vega v. Cingular Wireless, 568 F. Supp. 2d 180, 191 (D.P.R.

2008) (citing Hamilton v. Starcom Mediavest Gp., Inc., 522 F.3d 623, 627-28 (6th Cir. 2008)),

and generally involves the loss of ERISA benefits as a consequence to an improperly motivated

adverse employment action.  Cf. Barbour, 63 F.3d at 37; Newman v. Metro. Life Ins. Co., No. 12

Civ. 10078, 2013 WL 951779, at *4 (D. Mass. Mar. 8, 2013) (plaintiff asserted § 510 action

---

[12] Section 510 of ERISA provides in part:

> It shall be unlawful for any person to discharge, fine, suspend, expel,
> discipline, or discriminate against a participant or beneficiary for
> exercising any right to which he is entitled under the provisions of an
> employee benefit plan . . . *for the purpose of interfering with the*
> *attainment of any right to which such participant may become entitled*
> *under the plan* . . . .

29 U.S.C. § 1140 (emphasis added).

"based upon the alleged termination of her employment from LBI in retaliation for being a whistleblower").  This plainly is not the case here, where, far from suffering a retaliatory deprivation of benefits stemming from a termination of employment, Mr. White voluntarily ended his tenure with Framingham, and only then learned that he was entitled to benefits.  Since plaintiffs have failed to plead any semblance of retaliation by defendant, they have not adequately alleged an ERISA § 510 action.  I therefore recommend that the fourth claim be dismissed.

## CONCLUSION

For the foregoing reasons, I recommend that the court deny defendant's motion insofar as it seeks to dismiss the First and Second claims in the FACAC, and grant the motion insofar as it seeks dismissal of the FACAC's Third and Fourth claims.[13]

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[13] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).